[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
After a trial of this action the court finds the following facts. Scharr Industries, Inc. ("Scharr") is a Connecticut corporation with an office and factory facility in Bloomfield, Connecticut. Scharr manufactures coated plastics, primarily for use in the packaging industry. On May 14, 1991 the plaintiff, Carl Dryden ("Dryden"), commenced employment with Scharr at the Bloomfield factory. Prior to the commencement of employment, Dryden signed an employment application with Scharr which contained the following language:
 I agree that, if employed, I will conform my conduct to your rules and regulations and understand that, unless otherwise agreed to in writing, my employment can be terminated, with or without cause, and with or without notice, at any time, either at your or my option. I acknowledge that only officers of the corporation have the authority to bind it to an employment contract for a defined term.
CT Page 4222
Based on the foregoing language in the employment application and on the absence of any claim or evidence of an employment contract, Dryden was an employee at will, whose employment could generally be terminated at any time without cause. Sheets v.Teddy's Frosted Foods, Inc., 179 Conn. 471, 474, 427 A.2d 385
(1980); Somers v. Cooley Chevrolet Co., 146 Conn. 627, 629,153 A.2d 426 (1959); Fisher v. Jackson, 142 Conn. 734, 736,118 A.2d 316 (1955).
Initially, Dryden worked the evening shift, but after Dryden requested the day shift, Scharr assigned him to work on the day shift operating a slitting machine. Although Dryden's work performance was satisfactory, he had a chronic problem with absenteeism and lateness to work In 1992 Dryden received a verbal warning for absenteeism. Several months thereafter, on April 23, 1992, Dryden received a written warning because he was again absent on April 20, 1992 and had not called in to alert his employer that he would be absent. In 1993 Dryden had the worst attendance record in his department. He was absent 18 times between January, 1993 and July, 1993. On May 3, 1993 Dryden received a verbal warning for absenteeism from his supervisor, Carlos Massiah. On July 12, 1993 Dryden received a written warning for absenteeism and was placed on 90 days probation. Two days after receiving the foregoing written warning, Dryden was again absent for two days.
On July 21, 1993 Dryden injured himself at work. He reported the injury to his supervisor, Carlos Massiah. Massiah asked Dryden whether he needed to be driven to receive medical attention. Dryden drove himself to see the company doctor. Thereafter Dryden left work for period of time each day to obtain physical therapy and neither his supervisor, not anyone else at Scharr attempted to prevent him from doing so, or even made any negative comment about the fact that he was leaving work to obtain treatment.
The operation of Dryden's slitting machine required the operator to press a button and then sit and watch the machine. However, the loading and unloading of the slitting machine was a more physical activity. After Dryden's injury other Scharr employees assisted him with loading and unloading the machine.
July 30, 1993 was a Friday, which was the busiest day of the week at Scharr's Bloomfield factory because it was the day on CT Page 4223 which their product was shipped out to customers. July was one of the busiest months of the years for the Scharr Bloomfield facility. When a slitting machine operator was absent, if he called in on time, Scharr could attempt to have another employee replace him. When a slitting machine operator was late, then the daily production of the slitting machine diminished. On July 30th, Dryden did not appear at work until 8:40 a.m. even though his shift started at 6:00 a.m. Carlos Massiah was on vacation on that date. Another supervisor, David Packard, was filling in for Massiah. When Packard advised John Mahoney, the plant manager, that Dryden was late for work, Mahoney believed that Dryden's machine would not meet its production deadline for the week. Mahoney was aware of Dryden's pattern of lateness and absenteeism and was particularly upset that Dryden was late on a Friday, the busiest day of the week in July, one of the busiest months of the year. Considering the lateness on that day the "straw that broke the camel's back," Mahoney instructed David Packard to terminate Dryden's employment.
At the time of Dryden's termination, neither David Packard, nor John Mahoney, were aware that he had been injured on the job. In addition, at the time of the termination Dryden did not inform Packard or anyone else that his lateness was connected in any way with his work-related injury. At the time of the termination no one could have been aware that Dryden had filed a workers' compensation claim for his injury because he did not file any such claim until August 16, 1993.
In the First Count of the Complaint the plaintiff alleges that Scharr terminated him "in retaliation for his seeking workers' compensation benefits including light duty status." Connecticut General Statutes § 31-290a forbids discrimination or retaliatory discharge for filing a claim or exercising any rights under the Workers' Compensation Act. "In order to establish a prima facie case under General Statutes § 31-290a, the plaintiff bears the initial burden of demonstrating discrimination by a preponderance of the evidence. [Citation omitted.] The plaintiff must present some evidence from which a trier of fact could infer that the employer discharged or discriminated against the employee because he or she had exercised his or her rights under the Workers' Compensation Act. [Citation omitted.] Without some proof of an improper motive, a plaintiff's case must fail." Chiaia v. Pepperidge Farm, Inc.,24 Conn. App. 362, 366, 588 A.2d 652 (1991). In order to meet his initial burden of proof, the plaintiff must present some evidence CT Page 4224 of the defendant's discriminatory intent. Chiaia, at 369.
"If the plaintiff meets his initial burden, the burden then shifts to the defendant to rebut the presumption of discrimination by providing evidence of a legitimate, nondiscriminatory reason for its actions." Ford v. Blue Cross Shield of Connecticut, Inc., 216 Conn. 40, 53-54, 578 A.2d 1054
(1990). If the defendant sustains its burden and rebuts the presumption of discrimination, then the plaintiff must persuade the trier that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of belief. Ford at 53-54.
The plaintiff was terminated because of his poor attendance record and because he was late for work on one of his employer's busiest work days. Therefore, Scharr had a legitimate, nondiscriminatory reason for terminating the plaintiff's employment. The court finds for the defendant on the First Count of the Complaint.
In the Second Count of the Complaint the plaintiff has claimed that he was terminated in violation of Connecticut General Statutes § 31-12, which contains restrictions on the number of hours which can be worked by a person who has been designated as "handicapped" by a medical or governmental authority. The plaintiff presented no evidence that he was handicapped within the meaning of that statute and has not addressed the allegations of the Second Count at all in his Memorandum of Law. Therefore, the court finds for the defendant on the Second Count of the Complaint.
In the Third Count of the Complaint, the plaintiff alleges that Scharr negligently inflicted emotional distress upon him because it did not respond appropriately to his "light duty" status after his injury. The defendant did respond appropriately. It allowed Dryden to obtain physical therapy during working hours. Other employees assisted Dryden in performing tasks of loading and unloading the slitting machine, which were the only aspects of his job which were not "light duty." For the foregoing reasons, the court finds in favor of the defendant on the Third Count of the Complaint.
By the court,
Aurigemma, J. CT Page 4225